IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>NIKOLAOS MAMALIS,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Petitioner,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td>Crim. Action No.: RDB-09-0608</td></tr>
<tr><td>v.</td><td></td><td>Civil Action Nos.: RDB-14-1140</td></tr>
<tr><td></td><td>*</td><td>(Mot. to Vacate); RDB-13-2352</td></tr>
<tr><td>UNITED STATES OF AMERICA,</td><td></td><td>& RDB-15-2504 (Mots. for Return</td></tr>
<tr><td></td><td>*</td><td>of Property)</td></tr>
<tr><td>Respondent.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

The *pro se* Petitioner Nikolaos Mamalis ("Petitioner" or "Mamalis") was convicted on seven counts following an eight day jury trial in this Court.[1]  J., p. 1, ECF No. 214.  Count One charged Petitioner with Hobbs Act Conspiracy, in violation of 18 U.S.C. § 1951(a); Counts Two, Four, and Six charged Petitioner with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and Counts Three, Five, and Seven charged Petitioner with Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c).  *Id.* at 1-2.  Counts Two through Seven included charges of aiding and abetting, in violation of 18 U.S.C. § 2.  *Id.*  Subsequently, Judge Benson E. Legg of this Court sentenced Petitioner to concurrent sentences of twenty (20) years imprisonment as to Counts One, Two, Four, and Six and consecutive sentences of seven (7) years, twenty-five (25) years, and twenty-five (25) years imprisonment as to Counts Three, Five, and Seven respectively, for a

[1] Judge Benson E. Legg of this Court was the presiding judge at Petitioner's trial and at sentencing.  This case was reassigned to the undersigned Judge Richard D. Bennett on August 13, 2013.

total term of seventy-seven (77) years imprisonment. *Id.* at 3. Currently pending before this Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 295), Motion for Leave to Amend the pending Motion to Vacate (ECF No. 303)[2], and Motion for Return of Property (ECF No. 316). Also pending before this Court is an additional Motion for Return of Property (ECF No. 6), docketed in Civil Action No. RDB-15-2504.[3] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014).

For the reasons that follow, Petitioner's Motion to Vacate (ECF No. 295) is DENIED IN PART and STAYED IN PART. Specifically, Petitioner's Motion to Vacate is DENIED with respect to his convictions on Counts One, Two, Four, and Six and sentences as to those four counts. Accordingly, his convictions on Counts One, Two, Four, and Six and concurrent twenty (20) year sentences as to those convictions remain unaltered. Petitioner's Motion to Vacate is STAYED with respect to Counts Three, Five, and Seven, violations of 18 U.S.C. § 924(c), pursuant to this Court's Standing Order 2015-06, Misc. No.

---

[2] Petitioner's Motion for Leave to Amend his pending Motion to Vacate (ECF No. 303) is GRANTED. In ruling on the pending Motion to Vacate (ECF No. 295), this Court will consider all additional arguments raised by Petitioner in his Motion to Amend (ECF No. 303) and "Supplemental Pleadings" (ECF No. 311).

[3] Petitioner has multiple actions for return of property currently pending in this Court under three separate docket numbers. The presently pending Motions for Return of Property are docketed as ECF No. 316 in the Criminal Action No. RDB-09-0608 and ECF No. 6 in the Civil Action No. RDB-15-2504. Both motions concern the same property currently in the possession of the Federal Bureau of Investigation. For the reasons stated *infra*, both motions are GRANTED IN PART and DENIED IN PART. Accordingly, this Court's Ruling will close both Civil Actions Nos. RDB-13-2352 and RDB-15-2504

00-308, issued November 12, 2015 (Standing Orders ECF No. 65).[4]   Additionally,

Petitioner's Motion for Return of Property (ECF No. 316) is GRANTED IN PART and

DENIED IN PART. Specifically, the $5,000 in cash; AEI Bersa .380 caliber handgun, Model

85, serial number 221692; nine (9) .380 FC cartridges; and one .380 handgun magazine,

currently in the custody of the Federal Bureau of Investigation, shall be remitted to the Clerk

of this Court and applied to Petitioner's unpaid restitution balance.   However, any additional

property belonging to the Petitioner that is currently in the possession of the Government

shall be returned to Petitioner.  Petitioner shall appoint a third party to accept that property.

## BACKGROUND

Documents filed *pro se* are "liberally construed" and are "held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (citation omitted). The facts of this case are as follows:

Between July and November of 2009, Petitioner Nikolaos Mamalis ("Petitioner" or

"Mamalis") and four co-conspirators committed a total of three armed robberies.  *United*

*States v. Mamalis*, 498 F. App'x 240, 243 (4th Cir. 2012).  Mamalis "knew the victims, assisted

---

[4] Chief Judge Catherine C. Blake of this Court has issued a Standing Order that "the briefing schedule in all pending and anticipated cases involving [*Johnson v. United States*, 135 S. Ct. 2551 (2015)] challenges to 18 U.S.C. § 924(c) convictions is suspended."  D. Md. Standing Order 2015-06, Misc. No. 00-308, Standing Orders ECF No. 65.  All Section 924(c) cases "will be held in abeyance pending the Fourth Circuit's decision in consolidated cases, *United States v. McNeal* and *United States v. Stoddard*, No. 14-4871 (L), 14-4872.  In these cases, at issue is whether the residual clause of § 924(c)(3), which defines "crime of violence" for purposes of a § 924(c) offense, is void for vagueness in light of *Johnson*.  The Fourth Circuit's decision in *McNeal* and *Stoddard* is likely to inform the outcome in federal habeas motions challenging § 924(c) convictions under *Johnson*."  *Id.*  Petitioner was convicted of violating 18 U.S.C. § 924(c) in Counts Three, Five, and Seven, and now challenges his conviction and sentencing as to those counts.  Additionally, the Office of the Federal Public Defender has advised this Court that Petitioner may have a viable *Johnson* claim. OFPD Letter, ECF No. 314.  Via this Court's Order dated March 9, 2016, the Federal Public Defender for the District of Maryland has been appointed to represent Petitioner because "he may be eligible for relief under 28 U.S.C. § 2255 in light of *Johnson*."  Order for Appointment of Counsel, ECF No. 319.  For these reasons, Petitioner's Motion to Vacate is STAYED with respect to his conviction and sentence on Counts Three, Five, and Seven.

with the planning of the robberies and surveillance of the victims, and coordinated [his co-conspirators'] actions via a cell phone during the robberies." *Id.*

On July 29, 2009, Mamalis and two of his co-conspirators robbed Precision Vending, "a private business in Baltimore, Maryland." *Id.* Mamalis was familiar with the store. *Id.* "Once the owner was alone in the building, [the co-conspirators] impersonated delivery men, gained access to the store, brandished a firearm, and stole over $10,000." *Id.*

On September 2, 2009, Mamalis and two of his co-conspirators "robbed the home of the owner of Citizens Pharmacy Services, another of Mamalis' acquaintances." *Id.* The two co-conspirators "impersonated law enforcement investigators, gained access to the gated community and then the home, brandished a firearm at the owner and his wife, and absconded with jewelry and cash." *Id.*

Finally, on September 29, 2009, Mamalis and three co-conspirators "robbed the home of the owner of Sparrow's Point Restaurant, yet another of Mamalis' acquaintances." *Id.* This time, one of Mamalis' co-conspirators "impersonated an investigator with the Baltimore County State's Attorney's Office, gained access to the home, brandished a firearm at the owner and restrained him, allowing the defendants to steal over $110,000." *Id.*

Through wiretap interceptions, law enforcement learned that Mamalis planned to commit another robbery in Atlantic City, New Jersey. *Id.* In November of 2009, law enforcement began surveillance of Mamalis and his co-conspirators in Baltimore and followed them to Atlantic City. *Id.* In Atlantic City, law enforcement officials arrested Mamalis and two of his co-conspirators. *Id.* Subsequently, they searched the vehicle of one of the con-conspirators "and discovered mace, rope, rubber gloves, handcuffs, empty money

bags, a knife, tape, and fake law enforcement identification." *Id.* "Pursuant to a search warrant, officials then searched Mamalis' hotel room and recovered a cell phone, hotel receipts, a wallet, . . . a sock containing jewelry, and other items." *Id.* Officials later recovered a firearm and a firearm box during a search of Mamalis' residence. *Id.*

Mamalis was indicted on seven counts. *Id.* Count One charged Mamalis with Hobbs Act Conspiracy, in violation of 18 U.S.C. § 1951(a); Counts Two, Four, and Six charged Mamalis with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and Counts Three, Five, and Seven charged Mamalis with Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). Third Superseding Indictment, ECF No. 136. Counts Two through Seven included charges of aiding and abetting, in violation of 18 U.S.C. § 2. *Id.*

Mamalis filed "several motions to suppress tangible evidence, wiretap evidence, and various statements," but Judge Benson E. Legg of this Court denied these motions following a suppression hearing. *Mamalis*, 498 F. App'x at 243-44. At the conclusion of an eight day jury trial in this Court, over which Judge Legg presided, Mamalis was convicted on all seven counts. *Id.* at 244; Verdict Form, ECF No. 173.

Subsequently, Judge Legg sentenced Petitioner to twenty (20) years imprisonment to run concurrently for the Conspiracy to commit a Hobbs Act Robbery (Count One) and the three Hobbs Act Robberies (Counts Two, Four, and Six); seven (7) years imprisonment to run consecutively for using a firearm in relation to the conspiracy in Count One and the Hobbs Act Robbery in Count Two (Count Three); twenty-five (25) years imprisonment to run consecutively for using a firearm in relation to the conspiracy in Count One and the

Hobbs Act Robbery in Count Four (Count Five); and twenty-five (25) years imprisonment to run consecutively for using a firearm in relation to the conspiracy in Count One and the Hobbs Act Robbery in Count Six (Count Seven). *Id.*   Accordingly, this Court sentenced Mamalis to a total of seventy-seven (77) years imprisonment.  *Id.*

On June 30, 2011, Petitioner noted an appeal (ECF No. 217) to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed this Court's judgment on December 4, 2012, *see Mamalis*, 498 Fed. App'x at 240, and issued its formal mandate on January 8, 2013 (ECF No. 264). On March 30, 2014, Mamalis executed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 295), which was filed in this Court on April 9, 2014.[5]  Subsequently, he filed a Motion for Leave to Amend his Motion to Vacate (ECF No. 303) and a Motion for Return of Property (ECF No. 316).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) the court lacked "jurisdiction to impose the sentence; . . . [(3)] the sentence was in excess of the maximum authorized by law; or [(4) the sentence] is otherwise subject to a collateral attack."  28 U.S.C. § 2255. "[A]n error of law does not provide a basis

---

[5]  In their Opposition to the pending Motion to Vacate (ECF No. 305), the Government claimed that Petitioner's Motion was untimely.  *See* Gov't Opp'n, p. 11, ECF No. 305.  However, via Letter dated August 5, 2015, the Government "withdr[ew] their assertion that Mr. Mamalis'[] petition was not timely filed." Letter, ECF No. 313.  All petitions for post-conviction relief pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations.  28 U.S.C. § 2255(f).  This limitations period runs from the latest of, *inter alia*, . . . "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  Finality attaches to a conviction when the United States Supreme Court "affirms [that] conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *United States v. Clay*, 537 U.S. 522, 527–28 (2003).  The United States Supreme Court denied Mamalis' petition for a writ of certiorari on May 13, 2013.  *See Mamalis v. United States*, 133 S. Ct. 2372 (2013) (denying cert.). Therefore, Mamalis' Motion to Vacate (ECF No. 295), filed in this Court on April 9, 2014, is timely.

for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

## DISCUSSION

**I.     Petitioner's Concurrent Twenty Year Sentences as to Counts Two, Four, and Six (Hobbs Act Robbery) and Count One (Conspiracy to Commit Hobbs Act Robbery) Were Properly Imposed**

Petitioner claims that his sentence as to Count One, Conspiracy to Commit Hobbs Act Robbery, was imposed in violation of the Sixth Amendment to the United States Constitution and the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  Mem. Supp. Mot. to Vacate, p. 1-2, ECF No. 295-1.

In *Blakely v. Washington,* the United States Supreme Court held that facts increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and must be proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 306. *Blakely* applies to the now-advisory Federal Sentencing Guidelines. *See United States v. Booker*, 543 U.S. 220, 226-27, 245 (2005). Although *Blakely* prohibits judicial fact-finding to support a sentence beyond the statutory maximum, courts can make factual findings to determine an appropriate sentence at or below that maximum. *See United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict").

Petitioner argues that this Court impermissibly "grounded [his] penalty on the judicially found fact convicting Mamalis of manslaughter[6]." Mem. Supp. Mot. to Vacate, p. 2, ECF No. 295-1.   Evidence introduced before Judge Legg indicated that a man named Constantine Frank was bound and restrained during the commission of the Precision Vending robbery.   He was found unconscious sometime after the robbery and died less than two weeks later due to intracerebral hemorrhage associated with stress resulting from the robbery.   For these reasons, Judge Legg found that the "felony murder" provision of sections 2B and 2A1.1 of the Federal Sentencing Guidelines Applied.   Sentencing Transc., p. 9-18, ECF No. 238.   Accordingly, because Constantine Frank died "as a result of" the Precision Vending robbery, Petitioner was sentenced at a base level between 38 and 41.   *Id.* However, "[b]ecause death was caused unintentionally, Judge Legg found that a downward departure was warranted as to count I, resulting in a base offense level of 38."   Statement of Reasons, p. 1, ECF No. 215.

Petitioner contends that his offense level should have been 20 and that, with a criminal history score of I, his advisory guideline range should have been 33-41 months. Mem. Supp. Mot. to Vacate, p. 2, ECF No. 295-1.   However, Petitioner provides no explanation for why he should have been assigned an offense level of 20.   Judge Legg's calculations were in compliance with *Benkahla* because they were based on a finding, by a preponderance of the evidence, that Frank died as a result of the Precision Vending Robbery and the sentence ultimately imposed fell within the statutory maximum for Hobbs Act

---

[6] Petitioner's guideline range was actually based on the "felony murder" provisions of sections 2B and 2A1.1 of the Federal Sentencing Guidelines.   *See* Sentencing Transc., p. 12, ECF No. 238.   Petitioner correctly notes this fact in his Supplemental Pleadings.   *See* Supp. Pleadings, p. 2, ECF No. 311 (objecting to Judge Legg's finding at sentencing that Petitioner committed "*felony murder*").

Robbery.  *See* 18 U.S.C. § 1951(a) (violators of this statute "shall be . . . imprisoned not more than twenty years").   Where a Section 2255 motion is based on an alleged sentencing miscalculation, relief should only be afforded where "the sentence was in excess of the maximum authorized by law" and therefore constitutes a "miscarriage of justice."  28 U.S.C. § 2255(a); *see United States v. Mikalajunas*, 186 F.3d 490, 496-96 (4th Cir. 1999).  Petitioner has failed to demonstrate that Judge Legg improperly calculated his sentence or that a miscarriage of justice occurred.  Accordingly, his first argument fails.

In his Supplemental Pleadings (ECF No. 311), Petitioner additionally claims that "felony murder" requires a death " 'during,' 'in the course of,' or 'in the perpetration of' " a felony offense.  Supp. Pleadings, p. 2, ECF No. 311. *Id.*  Because Constantine Frank "died approximately eleven [] days after having been bound and tied," Petitioner argues that Judge Legg lacked sufficient evidence on which to base a finding of "felony murder."   *Id.* Petitioner also argues that "there was no competent evidence presented at sentencing establishing that the binding and tying of Constantine Frank . . . was the sole proximate cause of his death."  *Id.* at 3.  Petitioner cites the United States Supreme Court's decision in *Burrage v. United States*, 134 S. Ct. 881 (2013) for the proposition that "for the defendant to be liable for the decedent's death, there must be proof that death would not have occurred 'but-for' and independently" of the defendant's actions.   *Id.*   Here, Defendant contends, the Government's witness Dr. Pamela Southall testified that Frank "had preexisting intracranial hemorraging," "an enlarged heart," and other complications that may have caused his death. *Id.*   For these reasons, Petitioner argues that he "cannot and should not have been held culpable for causing a first-degree or felony murder of Mr. Constantine."   *Id.* at 4.

Again, Petitioner's arguments on these points fail to establish that a "miscarriage of justice occurred." *See* 28 U.S.C. § 2255(a); *Mikalajunas*, 186 F.3d at 496-96.  As stated *supra*, the facts in evidence amply supported Judge Legg's finding by a preponderance of the evidence that the Felony Murder guidelines range applied to Petitioner's sentence.  The facts in evidence showed that Constantine Frank was found unconscious and bound sometime after the robbery.  Less than two week later, he died due to intracerebral hemorrhage.  The facts suggested that his death was associated with stress resulting from the robbery.  Accordingly, Petitioner's supplemental arguments also fail.[7]

## II.   Petitioner's Enhanced Sentences for "Second or Subsequent" Convictions in Counts Five and Seven Did Not Violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000) or *Alleyne v. United States*, 133 S. Ct. 2151 (2013)

Petitioner contends that Judge Legg conducted unconstitutional "judicial fact-finding" in determining that Petitioner's convictions on Counts Five and Seven were "second or subsequent convictions," triggering a 25-year statutory minimum sentence as to those counts.  Mem. Supp. Mot. to Vacate, p. 3-4, ECF No. 295-1.  Because this finding "increase[d] the mandatory minimum," Petitioner claims that Judge Legg's calculations violated the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466

---

[7] In his Supplemental Pleadings, Petitioner raises corresponding ineffective assistance of counsel claims, alleging prejudice due to his trial counsel's failure to raise these additional arguments. To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice," prong requires that the defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687. It requires a showing that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. Because Petitioner's arguments fail, Petitioner fails to demonstrate that his case was prejudiced by counsel's decision not to raise them.  Accordingly, Petitioner's ineffective assistance arguments fail.

(2000) and *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Id.* Petitioner argues that a jury must find that a conviction is "second or subsequent conviction" in order to trigger a sentence enhancement under 18 U.S.C. § 924.

Petitioner argued on direct appeal that his second and third 18 U.S.C. § 924(c) convictions (Counts Five and Seven) should not have been considered "second or subsequent" convictions for sentencing purposes. However, the United States Court of Appeals for the Fourth Circuit rejected his argument. *See United States v. Mamalis*, 498 F. App'x 240, 250 (2012) (unpublished). The Fourth Circuit held that Petitioner's argument was foreclosed by *Deal v. United States*, 508 U.S. 129 (1993). In *Deal*, the Supreme Court held that any § 924(c) conviction subsequent to an initial § 924(c) conviction—whether the offenses took place in separate incidents or not—qualifies as a second or subsequent conviction under § 924(c). *Id.* at 135. As Count Three was Mamalis' initial § 924 conviction, Count Five and Seven were appropriately treated as second or subsequent at sentencing, triggering a mandatory maximum sentence of twenty-five years as to those counts.[8]

Petitioner now attacks his sentence under *Alleyne* and *Apprendi*. In *Alleyne* the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of that crime, and not a sentencing factor. *Id.* As an element of the

---

[8] In Supplemental Briefing, Petitioner renews his objection to Judge Legg's "stacking" of Counts Five and Seven, arguing that the "stacking" of Petitioner's Section 924(c) convictions "no longer has legal equity." Supp. Pleadings, p. 9, ECF No. 311. In support of his argument, Petitioner cites a 2011 United States Sentencing Commission Report, a law review article, and a 2014 opinion by Judge Gleeson of the United States District Court for the Eastern District of New York, *United States v. Holloway*, 2014 U.S. Dist. LEXIS 102707 (E.D.N.Y. May 14, 2014) criticizing the "stacking penalty" and its impact on minority defendants. As stated above, the Supreme Court has authorized Judge Legg's decision to "stack" offenses in situations like this one—whether or not the subsequent convictions were separate incidents. *See Deal*, 508 U.S. at 135. Therefore, Petitioner's objection to the "stacking" of Counts Five and Seven fails. However, as stated *supra*, this ruling does vitiate any claims for relief Petitioner may have under *Johnson v. United States*, 135 S. Ct. 2551 (2015) as to Counts Three, Five, or Seven.

crime, the fact "must be submitted to the jury and be found beyond a reasonable doubt." *Id.* at 2155. Petitioner claims that because the "second and subsequent" aspects of Count Five and Seven were never submitted to the jury, they could not be used by the Court to enhance his sentence. Mem. Supp. Mot. to Vacate, p. 4, ECF No. 195-1. Mamalis' argument, however, improperly assumes *Alleyne*'s holding is retroactive.

As the Supreme Court has explained, only when a new rule is a "watershed rule of criminal procedure" does it implicate the "fundamental fairness and accuracy of the criminal proceeding," and thus is applied retroactively. *Saffle v. Parks,* 494 U.S. 484 (1990). The Supreme Court has made this exception extraordinarily narrow by virtue of its rejection of every argument for this exception that has come before it. *See Whorton v. Bockting,* 549 U.S. 406 (2007) (emphasizing the narrow scope of the procedural right exception and listing cases where retroactive application was denied). Only those landmark decisions that fundamentally change criminal procedure may qualify for this exception. *See United States v. Powell*, 691 F.3d 554, 558 (4th Cir. 2012).

In *Apprendi v. New Jersey,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and be proved beyond a reasonable doubt." 530 U.S. at 490. The Fourth Circuit has held that *Apprendi* was not a watershed rule and therefore should not be given retroactive effect. *See, e.g., United States v. Sanders,* 247 F.3d 139, 147 (4th Cir. 2001).

As *Alleyne* simply broadened *Apprendi*, the necessary implication of *Sanders* is that *Alleyne* is also not afforded retroactive application. The Fourth Circuit noted as much in

*United States v. Stewart*, stating that *Alleyne* "has not been made retroactively applicable to cases on collateral review" *United States v. Stewart,* 540 F. App'x 171, 172 (4th Cir. 2013) (unpublished per curium);[9] *see also Jones v. United States,* No. RDB-08-0565, 2015 WL 5673083, at *4 (D. Md. Dept. 23, 2013) (holding that *Alleyne* does not apply retroactively on collateral review).  The United States Courts of Appeals for the Third, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits have reached identical conclusions, i.e., that *Alleyne* should not be applied retroactively. *United States v. Reyes*, 755 F.3d 210, 211 (3d Cir. 2014); *accord In re Kemper,* 735 F.3d 211, 212 (5th Cir. 2013); *In re Mazzio,* 756 F.3d 487, 489-90 (6th Cir. 2014); *Simpson v. United States,* 721 F.3d 875, 876 (7th Cir. 2013) ("Unless the Supreme Court Justices decide that *Alleyne* applies retroactively on collateral review . . . we cannot authorize a successive collateral attack . . ."); *Hughes v. United States,* 770 F.3d 814 (9th Cir. 2014); *In re Payne,* 733 F.3d 1027, 1029-30 (10th Cir. 2013). In 2014 the Supreme Court denied *certiorari* to a Third Circuit Court of Appeals case which had denied retroactive application to *Alleyne*. *United States v. Reyes,* 755 F.3d 210, 211 (3d Cir. 2014) *cert. denied*, —— U.S. ——, 135 S.Ct. 695 (2014).

Petitioner's conviction became final by, at latest, May 13, 2013;[10] *Alleyne* was decided on June 17, 2013. *Alleyne*, 133 S. Ct. at 2151. As *Alleyne* does not apply retroactively to Petitioner's sentence, Mamalis' collateral attack must fail.[11]

---

[9] *Stewart* is an unpublished opinion and thus not binding on the Fourth Circuit.  *See, e.g., United States v. Salami*, 134 F.3d 365 (4th Cir. 1998) ("Unpublished opinions are not binding precedent in this circuit.").

[10] *See supra* note 4.

[11] In Supplemental Pleadings, Petitioner raises the additional argument that Judge Legg improperly imposed a mandatory minimum seven year sentence as to Count Three, Petitioner's first violation of 18 U.S.C. § 924(c), based on his finding that Petitioner had "brandished" a firearm.  *Id.* at 6-7.  Petitioner contends that under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), this question should have been determined by a jury.  *Id.* at 7. Petitioner claims that neither the Third Superseding Indictment nor the Jury Verdict form included any

### III.    Petitioner Has Failed to Demonstrate Actual Innocence as to Any of the Counts on Which He Was Convicted

Petitioner asserts actual innocence as to his convictions for Hobbs Act Robbery (Counts Two, Four, and Six), Conspiracy to Commit Hobbs Act Robbery (Count One), and Using and Carrying of a Firearm During and in Relation to a Crime of Violence (Counts Three, Five, and Seven). The Supreme Court has made clear that "actual innocence means factual innocence, not mere legal insufficiency" with respect to the miscarriage of justice exception.[12] *Bousley v. United States,* 523 U.S. 614, 623-24 (citing *Sawyer v. Whitley,* 505 U.S. 333, 339 (1992)). "[T]enable actual-innocence gateway claims are rare." *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1928 (2013).

A credible claim requires reliable evidence "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that was not presented at trial.  *Schlup v. Delo*, 513 U.S. 298, 323 (1995).  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.,* 513 U.S. at 315-17. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new

---

indication that Petitioner had "brandished" a firearm, yet Judge Legg imposed a seven year mandatory minimum sentence under the "brandishing prong" of 18 U.S.C. § 924(c).  *Id.*  Petitioner argues that the holding in *Alleyne* applies to his sentence even though Alleyne does not have retroactive effect because it simply clarified "what *Apprendi* always meant and actually covered."  *Id.*  Petitioner cites no case law in support of his claim that Alleyne does govern in this case because it "clarified" a rule.  For the reasons stated *supra, Alleyne* does not apply to this case, and Petitioner's additional argument fails.  To the extent Petitioner also raises an ineffective assistance of counsel claim on account of his counsel's failure to make this argument, his claim fails.  *See Strickland*, 466 U.S. at 694 (The second, or "prejudice," prong requires a showing that "but for counsel's unprofessional errors, the result of the proceedings would have been different.").

[12] The "miscarriage of justice" exception applies where petitioner is "actually innocent" of crime of which he was convicted or penalty which was imposed. *Sawyer v. Whitley,* 505 U.S. 333, 339 (1992)

evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.,* 513 U.S. at 329.

To sustain a claim of actual innocence, Petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28). In response, the Government "may present any admissible evidence of [P]etitioner's guilt." *Bousley,* 523 U.S. at 615. As Mamalis fails to present any evidence as to his claim of actual innocence beyond his bare assertions, he has failed to carry his burden.

### A. Petitioner Has Failed to Demonstrate that He is Actually Innocent of Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a).

Count Two charges Mamalis with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), on account of his participation in the Precision Vending robbery. Petitioner claims actual innocence, alleging that he was in New Jersey during the robbery. He attempts to corroborate this claim by means of a traffic ticket he allegedly received. Mamalis has not, however, provided this Court with the ticket or any other evidence supporting his claim. As discussed *supra*, the jury convicted him based on overwhelming evidence of his involvement in the Precision Vending robbery presented at trial. Absent any new evidence under which a reasonable juror would not have found him guilty beyond a reasonable doubt, his claim alleging actual innocence must fail.

Mamalis also claims that the Government failed to prove an effect on commerce as is required under the Hobbs Act, 18 U.S.C. § 1951. A Hobbs Act crime has two elements: (1) robbery or extortion; and (2) interference with commerce. *Stirone v. United States*, 361 U.S.

212, 218 (1960). The Hobbs Act does not require proof that the defendant intended to affect interstate commerce; rather, the Government must only show that interstate commerce was affected as a natural result of the robbery. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (quoting *United States v. Spanglo*, 546 F.2d 1117, 1118-9 (4th Cir. 1976)). The Fourth Circuit has held that interference with commerce "may be shown by proof of probabilities without evidence that any particular commercial movements were affected." *United States v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985).

At trial, the Government established that Precision Vending conducted its business in a way that affected interstate commerce insofar as many of the items it sold were obtained from distributors outside of the state of Maryland and were transported across state lines. Interstate commerce was affected as a natural result of the robbery. See Williams, 342 F.3d at 354. The Government therefore satisfied the jurisdictional prerequisite of the Hobbs Act. Accordingly, Petitioner cannot establish actual innocence with respect to Count Three.

In Supplemental Pleadings, Petitioner additionally argues that Counts Two, Four, and Six of the Third Superseding Indictment failed to allege violations of the Hobbs Act because they failed to "allege that the property taken and attempted to be taken from [specific individuals] was in and affecting interstate commerce and/or that the property belonged to the [companies named in the indictment that were engaged in interstate commerce]." Supp. Pleadings, p. 8, ECF No. 311.

The two elements of a Hobbs Act crime are: (1) robbery or extortion, and (2) interference with commerce. *Stirone v. United States*, 361 U.S. 212, 218 (1960).The Hobbs Act does not require proof that the defendant intended to affect interstate commerce; rather, the

government must only show that interstate commerce was affected as a natural result of such a robbery. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (quoting *United States v. Spanglo*, 546 F.2d 1117, 1118–9 (4th Cir. 1976)). In fact, the Fourth Circuit has held that the jurisdictional predicate "may be shown by proof of probabilities without evidence that any particular commercial movements were affected." *U.S. v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985).

The Fourth Circuit concurs with its sister circuits in holding that there is a required nexus " 'between the extortionate conduct and interstate commerce in order to establish federal jurisdiction.... [T]he connection with or effect on interstate commerce must have been at least a realistic probability at the time of the extortion.' " *United States v. Buffey*, 899 F.2d 1402, 1404 (4th Cir. 1990) (quoting *United States v. Elders*, 569 F.2d 1020, 1023–1024 (7th Cir. 1977)). The required nexus can be satisfied through the depletion of assets theory. The government can prove the jurisdictional predicate by showing a reasonable probability that the defendant's actions would have the effect of depleting the assets of an entity engaged in interstate commerce. *Elders*, 569 F.2d at 1025. The Fourth Circuit addressed this issue in *Williams*, where four individuals robbed and killed a drug dealer. *Williams*, 342 F.3d at 352. The Fourth Circuit held that the trade of drug dealing affected interstate commerce, as it was both "economic and interstate in character."3 *Id.* at 354. Furthermore, the Fourth Circuit held that because the victim was targeted based on his profession, and because it could be rationally concluded that cash stolen from his person constituted the proceeds of his drug-dealing business, that the government had a sufficient connection between the robbery and interstate commerce for Hobbs Act jurisdiction. *Id.* at 355.

Counts Two, Four, and Six of the Third Superseding Indictment in this case alleged that Petitioner "did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce." *See* Third Superseding Indictment, p. 6, 8, 10, ECF No. 136. Additionally, it alleged that Petitioner "did unlawfully take and obtain property from the person and presence of" certain individuals who were identified as "owner[s]" of businesses identified as being engaged in "interstate commerce." *Id.* Like in *Williams*, these allegations were sufficient to plead an effect on interstate commerce, as required by the Hobbs Act. Consequently, Petitioner's argument fails.[13]

### B. Petitioner Has Failed to Demonstrate that He is Actually Innocent of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)

Petitioner next argues that he is actually innocent of actively employing a firearm during the commission of the Precision Vending robbery, as is required under 18 U.S.C. § 924(c). The substantial evidence presented at trial however supported the jury's finding of guilt, including wiretap evidence of Mamalis' discussions with co-conspirators and testimony placing Mamalis directly outside the robbery locations. Again, as Mamalis offers no new evidence to rebut his conviction, he fails to establish a claim of actual innocence with respect to Court Three.

## IV. Petitioner's Counsel Did Not Provide Ineffective Assistance

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated by: (1) improper rejection of plea offer; (2) failure to present a defense to the §

---

[13] Petitioner raises a corresponding ineffective assistance of counsel claim, arguing that his counsel failed to object to this jurisdictional defect and move for dismissal of the Third Superseding Indictment. Supp. Pleadings at 8. Because Petitioner's argument fails, he cannot demonstrate that his case was prejudiced by his counsel's failure to raise this argument. Accordingly, his ineffective assistance of counsel claim also fails.

924(c) charges; and (3) failure to claim actual innocence on appeal; and (4) failure to object to the admissibility of evidence on appeal.  As explained below, all four claims fail.

To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice," prong requires that the defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687. It requires a showing that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that it is not necessary to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee,* 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland,* 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland,* 466 U.S. at 697.

It is well settled that the Sixth Amendment right to counsel applies at the critical stage of plea bargaining. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 57 (1985); *Padilla v. Kentucky*, 559 U.S. 356 (2010). "Claims of ineffective assistance of counsel in the plea bargain context are

governed by the two-part test set forth in Strickland." *See Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citing Hill, 474 U.S. at 57). Where a plea offer has lapsed or been rejected because of counsel's deficient performance, a *Strickland* ineffective assistance claim may lie if the defendant makes three showings. *Id.* at 1409. First, a defendant "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel. *Id.* Second, the defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.* Finally, to prove prejudice "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* (citing *Glover v. United States,* 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.")).

### A.      Rejection of Alleged Plea Offer

Petitioner first claims that counsel's rejection of a plea offer shows ineffective assistance of counsel, as Petitioner would have accepted the offer. Before considering whether counsel improperly rejected a plea offer, this Court notes that the Government disputes the existence of an offer. Opp'n to Mot. to Vacate, 20, ECF No. 305. Indeed, Mamalis offers no evidence of the alleged plea offer, nor does he show the existence of a formal plea offer in the record. Absent a showing that a formal plea offer was made, Mamalis cannot meet the performance prong under *Strickland*, and his claim of ineffective assistance of counsel must fail.  *See Gilchrist v. United States*, Civ. A No. DKC 08-1218, 2012

WL 4520469, at *19 (D. Md. 2012) (unpublished) (reasoning that the petitioner cannot establish the deficient performance prong under *Strickland* without showing that a formal plea offer was made).

### B.      Alleged Failure to Present a Defense as to Count Three

Mamalis claims that counsel failed to present a defense to the § 924(c) firearm charge in two ways. First, he contends that counsel did not cite *Bailey v. U.S.*, 516 U.S. 137 (1995), which holds that § 924(c)(1)'s ban on "use" of a firearm did not reach "mere possession" of a weapon. However, counsel's decision not to cite *Bailey* was proper, as Congress overruled *Bailey* in 1998 by bringing possession within the ambit of § 924(b). *See Abott v. U.S.*, 562 U.S. 8, 9 (2010).

Second, Mamalis argues that counsel rendered ineffective assistance by failing to present Mamalis' alibi defense or to follow-up on witness leads. Petitioner contends that he did not participate in the July 29, 2009 robbery of Precision Vending, but was instead visiting Atlantic City, New Jersey with a man named "Horace Dickens or [Dickinson], correct spelling unknown." Supplemental Pleadings, *p.* 4, ECF No. 311. He objects that his trial counsel "failed to investigate and present for the defense an alibi witness and other exculpatory documentary evidence which corroborated" this claim. *Id.* Petitioner claims that he told his trial counsel to look for Horace at his home in Washington, DC, to check "EZ-Pass" toll receipts for record of their trip, and to investigate a traffic ticket that Petitioner received in Atlantic City. *Id.* at 5. Petitioner objects that his trial counsel did not pursue any of these leads. *Id.*

This Court notes that the Constitution of the United States does not require that counsel pursue *every* litigation strategy. As the Supreme Court has explained, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' . . . There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 690.

The decision regarding which witnesses to call is a question of strategy, as it "is a classic tactical decision left to counsel . . . even when the client disagrees." *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (internal citations omitted); *see also Sexton v. French,* 163 F.3d 874, 885 (4th Cir. 1998) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." (internal quotation marks omitted)).

Under the *Strickland* analysis*,* this Court has no difficulty finding that Petitioner's attorneys' actions fell "within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. As the Government points out, Petitioner has not offered "any proof of this clear-cut alibi" nor has Petitioner identified what testimony these witness leads would have produced, how this testimony would create a reasonable probability of a different outcome at trial, or how they would have supported Mamalis' alibi. Opp'n to Mot. to Vacate at 19. Absent this information, Mamalis has failed to show that he was prejudiced

by counsel's strategic choices, or that these choices fell below the objective standard of reasonableness, as required by *Strickland*.

### C.      Failure to Raise Actual Innocence on Appeal

Finally, Petitioner claims that his appellate counsel rendered ineffective assistance by failing to claim actual innocence. As discussed supra, *Strickland* affords counsel wide latitude in making tactical decisions. 466 U.S. at 689. When considering such strategic decisions, the Supreme Court warned that courts must "eliminat[e] the distorting effects of hindsight." *Id.* Therefore, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Id.*, as "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is a hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

In this case, Petitioner contends that appellate counsel "failed to tender relevant issues in support of appeal," and the brief was "conclusively contrary to the prevailing norms of a reasonable counsel." Opp'n to Mot. to Vacate at 10-12. Mamalis' appellate counsel challenged Mamalis' convictions and sentence on several grounds, including improper admission of evidence[14], the failure of this Court to instruct the jury on the definition of

---

[14] In his Motion to Amend, Petitioner objects that his appellate counsel "abandon[ed] . . . his Fourth Amendment claim."  Mot. to Amend., p. 3, ECF No. 303.  Petitioner claims that his appellate counsel provided inefective assistance by failing to object to "improper use of evidence obtained through wiretaps because (1) the warrants were invalid under 18 U.S.C.S. § 2518 and (2) the government failed to issue reports to the Administrative Office of the United States Courts (AO) in accordance with § 2519."  Id. at 1.  However, this issue was raised on appeal and specifically rejected by the United States Court of Appeals for the Fourth Circuit.  *See United States v. Mamalis*, 498 F. App'x 240, 246 (4th Cir. 2012) ("Mamalis then argues that the district court improperly admitted evidence obtained through the wiretaps because (1) the warrants were not valid under 18 U.S.C. § 2518 and (2) the government failed to issue reports to the Administrative Office of the United States Courts (AO) in accordance with 18 U.S.C. § 2519. We disagree.").  Accordingly, Petitioner's claim fails.

reasonable doubt, and violation of the Double Jeopardy Clause, U.S. CONST. amend V. Petitioner claims that, in addition to these arguments, counsel should have presented a claim of actual innocence. As discussed *supra*, neither the trial record nor Mamalis' submissions with respect to the pending Motion to Vacate support his claim of actual innocence. Therefore, he fails to show prejudice as a result of his counsel's failure to raise this claim.

To the extent that Petitioner has renewed his objection to the trial court's failure to define "reasonable doubt" for the jury, that argument will again fail. The Fourth Circuit has explicitly "urged trial courts to avoid defining reasonable doubt unless requested to do so by the jury." *See, e.g., United States v. Porter*, 821 F.2d 968, 972 (4th Cir.1987). Petitioner has already raised this argument on appeal, and the Fourth Circuit rejected it. *See United States v. Mamalis*, 498 F. App'x 240, 249-50 (4th Cir. 2012)("Mamalis argues that the district court abused its discretion when it declined his request to give a jury instruction defining reasonable doubt. We hold that this claim has no merit . . . [O]ur precedent establishes that the district court need not define reasonable doubt for the jury, even when such an instruction is requested by the jury. *See United States v. Walton*, 207 F.3d 694, 696–97 (4th Cir.2000) (en banc)").

## V.  Petitioner's $5,000 in Cash, Handgun, Handgun Magazine, and Cartridges, Currently in the Possession of the Federal Bureau of Investigation, Will Be Applied Toward Petitioner's Unpaid Restitution

Petitioner claims that, upon his arrest, the Government seized the following property: "$5,000-dollars in U.S. Currency; Misc. Papers and Business Checks; Residency; a Diamond Ring; Six Gold Necklaces; A Silver and Black Rolex Watch; A Brown Leather Briefcase; A Gray H/P Laptop Computer, and a Power Cord and A Silver Laptop." Mot. for Return of

Property, p. 1, 4, ECF No. 316.  Additionally, the Federal Bureau of Investigation ("FBI") is currently in possession of the Petitioner's AEI Bersa .380 caliber handgun, Model 85, serial number 221692; nine (9) .380 FC cartridges; and one .380 handgun magazine.  *See* Gov't Response, p. 3, ECF No. 302.  Mamalis claims that these items belong to him, that they were never subject to forfeiture, and that the Government has no right to maintain control and custody of them.  Mot. for Return of Property, p. 1-2, ECF No. 316.

Under the Mandatory Victims Restitution Act, and related provisions in the Victim and Witness Protection Act, if a court determines that multiple defendants have contributed to the loss of a victim, the Court may declare each defendant jointly and severally liable for the full amount of restitution.  18 U.S.C. § 3663; 18 U.S.C. § 3664(h).  Via Order dated June 12, 2014, this Court directed Petitioner to pay restitution in the amount of $140,000.[15] Restitution Order, ECF No. 317.  The Government has indicated that, as of October 26, 2015, Petitioner had made no payments toward the balance of his restitution.  Mot. to Apply Money at ¶ 3, ECF No. 317.  Therefore, the Government requests that Petitioner's $5,000 in cash; AEI Bersa .380 caliber handgun, Model 85, serial number 221692; nine (9) .380 FC cartridges; and one .380 handgun magazine be delivered "to the Clerk of the Court to be applied toward Defendant's restitution obligations."  Gov't Response, p. 5, ECF No. 302.

No forfeiture order was requested at Defendant's sentencing, nor has a civil forfeiture action been initiated by the Government in this case.  However, an order of

---

[15] Petitioner objects that the imposition of restitution after he had "developed a reasonable expectation of finality in the sentence" constitutes "Double Jeopardy."  Mot. for Return of Property, p. 2, ECF No. 6 (Civ. Action. No. 15-2504).  However, this Court did indicate in its Judgment that restitution would be ordered. *See* J., p. 6, ECF No. 214.  Determination of the exact amount was deferred 30 days.  *Id.*  Additionally, Petitioner cites no case, and this Court is aware of none, holding that a Court may not defer determination of the precise amount of restitution 30 days past sentencing.  Accordingly, Petitioner's argument fails.

restitution constitutes a lien in favor of the United States on all property of the person fined. *See* 18 U.S.C. § 3613(c).  The lien arises when judgment is entered and continues for twenty years or until the liability is satisfied.  *Id.*  "A Defendant's right to the return of lawfully seized property is subject to the Government's legitimate continuing interest in that property."  *Lavin v. United States*, 299 F.3d 123 (2d Cir. 2002).  Accordingly, when this Court entered a Restitution Order against Petitioner, the Government acquired a lien on his property.  Therefore, Petitioner is not entitled to return of his seized property.  *See Lawson v. United States*, No. CIV. AW-09-1778, 2010 WL 152046, at *1 (D. Md. Jan. 13, 2010)

In light of Petitioner's unpaid restitution, and in accordance with the Government's recommendation, Petitioner's Motion for Return of Property (ECF No. 316) is GRANTED IN PART and DENIED IN PART.  Specifically, Petitioner's $5,000 in cash; AEI Bersa .380 caliber handgun, Model 85, serial number 221692; nine (9) .380 FC cartridges; and one .380 handgun magazine, currently in the custody of the FBI, will be remitted to the Clerk of this Court and applied toward Petitioner's unpaid restitution balance.  However, any additional property belonging to the Petitioner that is currently being held by the Government will be returned to Petitioner.  Pursuant to the Government's request (Letter dated Sept. 21, 2015, ECF No. 8-1, docketed in Civil Action No. RDB-15-2504), Petitioner is directed to appoint a third party to accept that property.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 295) is DENIED IN PART and STAYED IN PART.  Specifically, Petitioner's Motion to Vacate is DENIED with respect to Counts One, Two, Four, and Six.

26

Accordingly, Petitioner's convictions on Counts One, Two, Four, and Six and concurrent twenty (20) year sentences as to those convictions remain unaltered. Petitioner's Motion to Vacate is STAYED with respect to Counts Three, Five, and Seven, the 18 U.S.C. § 924(c) violations, pursuant to this Court's Standing Order 2015-06, Misc. No. 00-308, issued November 12, 2015 (Standing Orders ECF No. 65). Additionally, Petitioner's Motion for Return of Property (ECF No. 316) is GRANTED IN PART and DENIED IN PART. Specifically, Petitioner's $5,000 in cash; AEI Bersa .380 caliber handgun, Model 85, serial number 221692; nine (9) .380 FC cartridges; and one .380 handgun magazine, currently in the custody of the Federal Bureau of Investigation, shall be remitted to the Clerk of this Court and applied toward Petitioner's unpaid restitution balance. However, any additional property belonging to the Petitioner that is currently in the possession of the Government shall be returned to Petitioner. Petitioner shall appoint a third party to accept that property.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the Court's earlier order. *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell,* 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's

claims for relief debatable with respect to Counts One, Two, Four, and Six, a certificate of appealability is DENIED with respect to Petitioner's claims for relief as to those counts.  A certificate of appealability is also DENIED with respect to all non-*Johnson* related claims rejected *supra* as to Counts Three, Five, and Seven.

A separate Order and Forfieture Order follow.

Dated:          April 5, 2016

_____/s/_____
Richard D. Bennett
United States District Judge